IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ELVIRA GARZA,            §
                                  §
            Plaintiff,          §
                                  §
V.                                  §          No. 3:11-cv-3545-G-BN
                                  §
MICHAEL J. ASTRUE,        §
Commissioner of Social Security,   §
                                  §
            Defendant.       §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Elvira Garza, seeks judicial review of a final adverse decision of the

Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated

herein, the hearing decision should be reversed in part and affirmed in part.

**Background**

Plaintiff alleges that she is disabled as a result of a variety of ailments,

including cardiopulmonary disease, osteoarthritis/osteoporosis, back injuries (including

disc protrusions and mild spondylosis, a degenerative disease of the disc and joints of

the spine), knee injuries (including several meniscus tears and chondromalacia, a

disease affecting the knee cartilage), shoulder injuries, anemia, high blood pressure,

high cholesterol, and a history of transient ischemic attack ("TIA"). Plaintiff filed an

application for disability and supplemental social security ("SSI") benefits on

September 22, 2006, which was denied initially and on reconsideration. Plaintiff

requested a hearing before an administrative law judge ("ALJ"). That hearing was held on September 29, 2008, after which her application was denied. Plaintiff filed an appeal, which was considered in the Northern District of Texas, Fort Worth Division. District Court Judge Terry Means remanded the application for further consideration on March 10, 2011, and the initial decision was vacated. A second hearing was held before an administrative law judge on May 24, 2011, and a decision was issued on September 22, 2011. The 2011 decision is being reviewed by this Court.[1]

At the time of the 2011 hearing, Plaintiff was 67 years old. She is a high school graduate, attended junior college for 2 years, and has past relevant work experience

---

[1] Plaintiff's complaint alleges that she resides in Fort Worth, Texas. *See* Dkt. No. 1 at ¶ 2. Although Title 42 U.S.C. § 405(g) provides that a civil action filed to review the final decision of the Commissioner "shall be brought in the district court of the United States for the judicial district in which the plaintiff resides," the defendant has not interposed any objection on the grounds of improper venue. The Defendant's failure to timely object waives any improper venue objection and, as a result, does not affect the jurisdiction of this Court to hear this particular case. *See* 28 U.S.C. § 1406(b); *Panhandle E. Pipe Line Co. v. Fed. Power Comm'n*, 324 U.S. 635, 638-39 (1945) ("[T]he question of which one should exercise the power in a particular case is a question of venue. None of the respondents objected at any time to the venue of the court below. The right to have a case heard in the court of proper venue may be lost unless seasonably asserted."); *Davis v. Califano*, 437 F.Supp. 978, 979 n. 1 (N.D. Ill. 1977); *Renaudette v. Astrue*, 482 F. Supp. 2d 121, 123 n. 4 (D. Mass. 2007); *see also Weinberger v. Salfi*, 422 U.S. 749, 763-64 (1975) ("Section 405(g) specifies the following requirements for judicial review: (1) a final decision of the Secretary made after a hearing; (2) commencement of a civil action within 60 days after the mailing of notice of such decision (or within such further time as the Secretary may allow); and (3) filing of the action in an appropriate district court, in general that of the plaintiff's residence or principal place of business. The second and third of these requirements specify, respectively, a statute of limitations and appropriate venue. As such, they are waivable by the parties, and not having been timely raised below, *see* FED. R. CIV. P. 8(c), 12(h)(1), need not be considered here.").

as a program administrator for the Texas Department of Human Services. Plaintiff has not engaged in substantial gainful activity since February 2002.

The ALJ found that Plaintiff was not disabled for her entire application period and therefore not entitled to disability or SSI benefits for the entire period for which she sought benefits. The ALJ found that Plaintiff was entitled to a closed period of disability starting on December 1, 2005 and ending on December 31, 2008. Plaintiff appeals the ALJ's denial of disability for two periods of time: (1) February 26, 2002 through November 30, 2005 and (2) January 1, 2009 through September 22, 2011 (the date of the ALJ decision). The medical evidence established that Plaintiff suffered from lumbosacral spinal impairment, and the ALJ concluded that the severity of that impairment equaled Section 1.04A in the social security regulations beginning December 1, 2005 and continuing through December 31, 2008. The ALJ concluded that the severity of her impairments did not meet or equal any impairments in the social security regulations from February 26, 2002 until December 1, 2005 and that Plaintiff experienced medical improvement related to her ability to work effective January 1, 2009. The ALJ further determined that Plaintiff had the residual functional capacity to perform a full range of light work but could not return to her past relevant employment. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as an information clerk – a job that exists in significant numbers in the national economy – during both periods of non-disability at issue.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. In three grounds for relief, Plaintiff argues that the ALJ committed reversible error by: (1) improperly finding Plaintiff medically improved to the point of being able to perform full-time work beginning January 1, 2009; (2) improperly rejecting her treating physician's opinions; and (3) improperly evaluating her credibility.

The Court determines that the hearing decision should reversed as to the finding of medical improvement but should be otherwise affirmed. This case should be remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the

entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.  The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.  The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.  If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the

resulting decision is not substantially justified. *Id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995). Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff contends that the ALJ erred in three ways: (1) by improperly finding Plaintiff medically improved to the point of being able to perform full-time work starting January 1, 2009; (2) by improperly discounting her treating physician's opinion; and (3) by improperly evaluating her credibility. The Court agrees that the ALJ erred by finding medical improvement but otherwise determines that Plaintiff's arguments are without merit.

### 1.

Plaintiff first contends that the ALJ incorrectly found that she had reached medical improvement as of January 1, 2009. More specifically, Plaintiff argues the ALJ "supplanted the opinions from a long-time treating expert, Dr. Kobett, who found a

lack of improvement in Ms. Garza's status at least through May 2009 (Tr. 836) and Dr. Brooks, who found insufficient evidence of improvement as of the most recent hearing, with his own lay interpretation of Ms. Garza's comments in the record." Dkt. No. 12-2 at 19. Plaintiff also contends that there is no evidence of any improvements in Plaintiff's symptoms, signs, and/or laboratory findings. *Id.* at 20. Defendant responds that Plaintiff's arguments are simply incorrect and, moreover, that the evidence supports the ALJ's findings.

The ALJ in the instant case found the claimant to be entitled to benefits for a "closed period" of time. Administrative Record [Dkt. No. 7] at 897. A "closed period" of time is where "a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of [the ALJ's] decision." *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002). In those instances in which an ALJ grants disability benefits for a closed period of time, two decisions occur. *Joseph v. Astrue*, 231 F. App'x 327, 329 (5th Cir. 2007). The ALJ first finds the applicant disabled and grants benefits. *Id.* The ALJ then engages in the termination decision-making process to determine that the disability ended at some point before the hearing. *Id.*

To determine when the disability, and therefore the closed period, ends, the ALJ must apply the medical improvement standard. *Teague v. Astrue*, 342 F. App'x 962, 963 (5th Cir. 2009). An ALJ may appropriately discontinue disability benefits when there is substantial evidence that "(1) there had been a medical improvement related to the ability to work, and (2) the individual is now able to engage in substantial gainful

activity."[2] *Id.* at 963-64. A "medical improvement" is any decrease in the medical severity of an impairment that was present at the time of the most recent favorable disability determination. *See* C.F.R. § 416.994(b)(1)(i); *Gardner v. Astrue*, No. 4:10-cv-226, 2011 WL 2292179, at *3 (N.D. Tex. Apr. 19, 2011). A medical improvement is related to a claimant's ability to do work when there has been a decrease in the claimant's impairment and an increase in the claimant's functional capacity to do basic work activities. *Teague*, 342 F. App'x at 964 (citing 20 C.F.R. § 404.1594(b)(3)). A finding that there has been a decrease in medical severity must be based on changes in the symptoms, signs, or laboratory findings associated with the impairment. C.F.R. § 416.994(b)(1)(I); *Gardner*, 2011 WL 2292179, at *3. The Commissioner has the burden of proving the claimant is no longer disabled as of the cessation date. *Waters*, 276 F.3d at 718.

---

[2] Though neither party raises it, the Court notes that, in "closed period" cases, many courts, including district courts in this circuit, apply an eight-step analysis to determine whether medical improvement occurred and, if so, whether that medical improvement was related to the claimant's ability to do work. *Jones v. Astrue*, 3:10-cv-2342-D, 2011 WL 2633793, at *3 (N.D. Tex. July 5, 2011) (relying on *Waters v. Barnhart*, 276 F.3d 716, 718-19 (5th Cir. 2002)); *Van Allen v. Astrue*, 1:09-cv-41-C, 2010 WL 3766690, at *5-*6 (N.D. Tex. Sept. 28, 2010); No. 1:08-cv-052-C, 2009 WL 2949764, at *4 (N.D. Tex. Sept. 15, 2009). The ALJ did not undergo a detailed analysis of these eight steps nor did he acknowledge that such steps exist. *See* Administrative Record [Dkt. No. 7] at 898. Because the Court finds that the ALJ's finding of medical improvement is not supported by substantial evidence and because the parties did not raise or brief any issue regarding the eight steps, the Court need not reach the question of whether the ALJ erred in failing to properly analyze whether a medical improvement occurred. The Court raises the issue so that on remand the ALJ may be aware it exists.

The ALJ found Plaintiff to be disabled starting December 1, 2005, as a result of her lumbosacral spinal impairment, which equaled the requirements of Section 1.04A. He then found that she (1) experienced medical improvement related to her ability to work effective on January 1, 2009, with no exceptions applying, and (2) regained the same residual functional capacity as before the finding of disability. Administrative Record [Dkt. No. 7] at 897-98. The ALJ relied on the following evidence in finding that Plaintiff had a work-related medical improvement: (1) Plaintiff's statements relaying improvement in her symptoms in October 2008 and January 2009 and (2) emergency room records detailing Plaintiff's daily activities, which included statements that, before her emergency room visit, she had been fairly active, walked her dog several times a week, and worked extensively in her yard without difficulty. *Id.* at 898, 975, 977.

No doctors evaluated these records, however, and no testimony was taken at the hearing on these records, as they had not yet been provided. In fact, in his decision, the ALJ acknowledged that Dr. Brooks testified that no evidence existed to determine whether Plaintiff had improved. *Id.* at 898. Specifically, Dr. Brooks testified as follows:

> Q: Okay. Now how about ... after December 2008, do you have an opinion regarding the limitations?

> A: There are – the only medical record after December 2008 is the treating source RFC dated 5/6/09, and that simply is stating his opinion in a listing of her chronic conditions. ... [T]here's really no objective medical evidence on which to base an assessment beyond December of 2008.

> Q: Okay. ... How are we coming to the opinion of that the equaling ending December 2008, is it just because there's no other evidence?

A: Right. Well, I can't say that it ended, I can say that it continued at least until that period, but she underwent surgery to correct the back issue ... it is the primary issue leading to the equal. If the back surgery were successful and eliminated her radical pain, and allowed her to improve her functions, then she would no longer equal that listing, but there's no evidence to state whether that was successful, or whether her symptoms and limitations continued. Other than the treating source note of May of 2009, which indicates that she still has severe limitations.

...

We have no information for the past two years on which to determine whether the limitations persisted.

*Id.* at 1071-72. Dr. Brooks went on to again state that the only evidence after 2008 was a May 2009 letter from Dr. Kobett that supported a continued finding of disability. *Id.* at 1072.

At the close of the hearing, the ALJ stated he would wait 30 days for medical records from December 2008 through the hearing date to make a determination regarding medical improvement. *Id.* at 1091. Plaintiff submitted additional records, which the ALJ reviewed. *See id.* at 898. The additional records demonstrate that, in October 2008, Plaintiff indicated that she was felling better, though she still had some soreness in her back and pain down her leg, *see id.* at 841, and that, in January 2009, Plaintiff said that her back and her nerves were "doing so much better" and, as a result, Dr. Kobett instructed her to stop taking Lyrica, the medicine prescribed for her back and nerve pain, *id.* at 849. Additional records from Baylor All Saints Medical Center relay Plaintiff's comments that she gardened and walked her dog several times per week. *Id.* at 977. Though not entirely clear, it appears that this is the only evidence on which the ALJ relied in making his finding of medical improvement.

The Court determines that there is not substantial evidence to support the ALJ's finding of medical improvement. While the records do mention Plaintiff's few statements indicating she was improving, had increased her daily activity, and had stopped one of her many medicines, nothing else in the record supports a conclusion of medical improvement. The ALJ must point to evidence that the symptoms, signs, or laboratory findings associated with the impairment had improved. *Vicknair v. Astrue*, No. 1:08-cv-052-C, 2009 WL 2949764, at *6, *7 (N.D. Tex. Sept. 15, 2009) (requiring the ALJ to rely on evidence of record to <u>specifically</u> demonstrate a change or improvement in symptoms, signs, or laboratory findings). Dr. Brooks testified that, to conclude Plaintiff no longer equaled the Section 1.04A listing, he would need to see evidence that the back surgery was successful, eliminated her radical pain, and allowed her to improve her functions. Administrative Record [Dkt. No. 7] at 1071-72. The general statements on which the ALJ relied do not constitute substantial evidence of any of the above – it is not sufficient that Plaintiff states she is feeling better or that she is no longer taking prescription pain medicine. *See Berry v. Astrue*, No. H-08-3764, 2010 WL 786608, at *13 (S.D. Tex. Mar. 8, 2010) (ceasing the use of a prescription narcotics for pain did not alone establish medical improvement). While the comments in the record regarding Plaintiff's daily activities were properly considered by the ALJ, without more they do not support a finding of medical improvement. *See Griego v. Sullivan*, 940 F.2d 942, 945-46 (5th Cir. 1991) (finding it appropriate to consider claimant's daily activities in determining medical improvement when decision was <u>also</u> based on <u>substantial</u>

medical reports). Finally, the hearing transcript reveals no significant testimony on the claimant's current medical condition.

At bottom, the ALJ based his decision with respect to medical improvement on a select few medical records without any testimony or opinions from any physicians or experts. Defendant failed to provide the ALJ with any evidence of medical improvement, despite the fact that he had the burden to do so. Notably, the ALJ seemed to place this burden on the claimant. *See* Administrative Record [Dkt. No. 7] at 1073. To the extent that the ALJ did so, such a demand was improper. *See Waters*, 276 F.3d at 718.

For these reasons, the case should be remanded as to the medical improvement finding so that a full analysis can be made. The Court notes that, in cases where no objective medical evidence exists by which a finding of medical improvement may be made, the ALJ should take steps to ensure that a complete record is made. To do so, the ALJ is not limited to the medical records already in existence. The ALJ may also request a consultative exam so that he may determine the "remedial effects of the prior surgeries, the continued existence of a back impairment, the severity of such impairment, or a medical opinion describing the types of work plaintiff should be capable of performing." *Ames v. Astrue*, No. 2:10-cv-244-J, 2012 WL 931346, at *9 (N.D. Tex. Mar. 13, 2012). This may be particularly appropriate if the experts in the instant case find that the evidence remains inconclusive with regard to whether medical improvement has occurred.

2.

Plaintiff also contends that the ALJ failed to discuss and apply the proper weight to her treating physician's opinions. *See* Dkt. No. 12-2 at 20-23. Because the Court concludes that the ALJ's finding of medical improvement was improper, the Court will not examine this treating physician argument as to that time period. Moreover, it appears that Plaintiff is only raising the treating physician argument as to the first time period at issue – February 26, 2002 through November 30, 2005. *See* Dkt. No. 12-2 at 26.

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c); *see also Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Even though the treating source opinion is generally entitled to controlling weight, the opinion may be given little or no weight when good cause is shown. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

In determining whether a treating physician's opinion is not entitled to "controlling weight," the ALJ must provide good reason for his decision and must consider the following factors: (1) the physician's length of treatment of the Plaintiff; (2) the physician's frequency of examination; (3) the nature and extent of the treatment

14

relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id.*; 20 C.F.R. § 404.1527(c).

The Fifth Circuit has concluded that "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton*, 209 F.3d at 456. In decisions construing *Newton*, the Fifth Circuit has explained that "the *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). In other words, a detailed analysis of these factors must be performed in those instances where there is no reliable medical evidence from a <u>treating</u> or <u>examining</u> physician that controverts a treating specialist. *See Benton v. Astrue*, No. 3:12-cv-874-D, 2012 WL 5451819, at *4-*5 (N.D. Tex. Nov. 8, 2012). The Court determines that where, as here, the only other evidence considered by the ALJ is that of a <u>consulting</u> physician, the ALJ must undertake a detailed analysis of the factors.

And, in rejecting a treating source opinion, the ALJ must clearly articulate his reasons for finding good cause in the hearing decision. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); SSR 96-2p, 1996 WL 374188 at *5 (S.S.A. July 2, 1996) ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons

for that weight."). Even assuming that the ALJ properly analyzed the necessary factors, the record must support the ALJ's findings for good cause to exist. *See, e.g.*, *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999) (finding that good cause was shown when the record established that every doctor, other than the treating physician, indicated that the claimant had no basis for her medical complaints).

The Court is not persuaded by Plaintiff's argument that the ALJ failed to properly analyze Dr. Kobett's opinions using the six factors noted above. In his decision, the ALJ noted the factors to be considered and then adequately specified his reasons for affording Dr. Kobett's opinion no weight. *See* Administrative Record [Dkt. No. 7] at 896-97. More specifically, the ALJ noted that Dr. Kobett had a "very longstanding treating relationship with the claimant" and that he saw her "regularly" as her "primary care physician." *Id.* at 896. The ALJ then pointed out several inconsistencies between the record as a whole and Dr. Kobett's opinions as well as inconsistencies between Dr. Kobett's records and Dr. Kobett's own findings. For example, the ALJ generally noted that:

- the abnormalities detailed by Dr. Kobett do not support the dire functional limitations assessed by Dr. Kobett;

- the functional limitations detailed by Dr. Kobett are not supported by objective findings in his treatment records, in the record generally, or in a functional capacity evaluation; and

- the claims of post-operative improvement and discontinued medicating found in the medical records conflict with Dr. Kobett's findings.

*Id.* at 896-97. The ALJ cited to the applicable regulations and demonstrated that the relevant factors had been considered. *Id.* Such an analysis is sufficient to make a determination that a treating physician's opinion be given no weight. *See Brock v. Astrue*, No. 3:10-CV-1399-BD, 2011 WL 4348305, at *4 (N.D. Tex. Sept. 16, 2011) ("The regulations require only that the Commissioner 'apply' the section 1527(d)(2) factors and articulate good reasons for the weight assigned to a treating source opinion. The ALJ need not recite each factor as a litany in every case." (citations omitted)).

Plaintiff also argues that Dr. Kobett's opinions were supported by the appropriate clinical and objective evidence in the record and therefore should have been afforded controlling weight. *See* Dkt. No. 12-2 at 26. But a review of the record indicates that the ALJ did not err in his conclusion. While there is some evidence to support Dr. Kobett's opinions for disability from February 26, 2002 through November 30, 2005, there is also evidence to support the ALJ's conclusion. For example, many of Dr. Kobett's records and notes from that time period do not mention, or only briefly mention, Plaintiff complaining of, or having, back, neck, shoulder or knee pain. *E.g.*, Administrative Record [Dkt. No. 7] at 225 (no mention), 226 (no mention), 243 (no mention but reference to another doctor performing a "scope" of her knee), 246 (no mention). In other places, Dr. Kobett's notes reference physical activity that Plaintiff was capable of performing during this time, such as walking 42 minutes three times per week, *id.* at 243, and riding a stationary bike, *id.* at 225. The fact that Dr. Kobett was not treating Plaintiff for her back, neck, knee and shoulder pain before May 2005 also supports the ALJ's decision to give no weight to Dr. Kobett's opinion during this

time period. *See id.* at 221, 238. Moreover, Dr. Kobett stated in the Multiple Impairment Questionnaire that the "earliest date that the description of symptoms and limitations" applies is 2005. *Id.* at 365. And, for her part, Plaintiff cites to several pages in the transcript that she contends support her argument, but the majority of those pages cover the time frame for which the ALJ found a disability existed and therefore do not support a claim for disability during the time period at issue. *See* Dkt. No. 12-2 at 26; *see also, e.g.,* Administrative Record [Dkt. No. 7] at 199, 210, 255-56, 423, 499, 688-93.

In May 2009, Dr. Kobett opined that Plaintiff would likely not improve in the future, that her condition would last for more than 12 months, and that she is "disabled" and "unable to do full time work." *Id.* at 836. His conclusion does not alter this Court's decision because whether a claimant is disabled is a legal conclusion to be determined by the ALJ. *See* 20 C.F.R. § 404.1527(e); SSR 96-5p, 1996 WL 374183 at *2 (S.S.A. July 2, 1996) (stating that under 20 CFR 404.1527(e) and 416.927(e), some issues, including whether an individual is "disabled" under the Act, are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case and that the final responsibility for deciding such issues is reserved to the Commissioner); *accord Miller v. Barnhart,* 211 F. App'x 303, 304-05 (5th Cir. 2006). In addition, because the statements were from May 2009 and made no reference to the time frame to which they applied, they do not lend weight to finding disability from 2002 to 2005.

18

The evidence discussed above also raises a final point – prejudice – that the parties did not fully brief but that the Court will briefly address. Assuming, *arguendo*, that the ALJ did err in giving no weight to Dr. Kobett's opinions, Plaintiff has not shown she was prejudiced by this decision, which is required to obtain relief. *See Dziuk v. Barnhart*, No. 02-20499, 67 F. App'x 248, 2003 WL 21145745, at *1 (5th Cir. May 1, 2003); *Parker v. Astrue*,1:07-cv-41-C, 2008 WL 793818, at *7 (N.D. Tex. Mar. 25, 2008). Plaintiff did not making the necessary showing that the ALJ's decision would have been different had he given controlling weight to Dr. Kobett's opinions. *See Parker*, 2008 WL 793818, at *7. In fact, as noted above, in his Medical Impairment Questionnaire responses, Dr. Kobett said the "earliest date that the description of symptoms and limitations" detailed in the questionnaire applies is "2005." Administrative Record [Dkt. No. 7] at 365. As such, even giving controlling, or great, weight to Dr. Kobett's opinion, the start date for finding disability would have been within or close to the start date found by the ALJ.

Because the Court finds that the ALJ did not err in his decision to give Dr. Kobett's opinion no weight and that, even if he did, Plaintiff has not established prejudice, this alleged ground for error should be denied.

3.

Finally, Plaintiff argues that the ALJ erred by failing to provide any specific reasons for finding Plaintiff's testimony on her severe musculoskeletal pain and resulting limitations not credible. *See* Dkt. No. 12-2 at 28. A review of the decision,

however, demonstrates a detailed analysis of the medical record and evidence as well as Plaintiff's complaints. *See* Administrative Record [Dkt. No. 7] at 891-97.

The social security regulations establish a two-step process for evaluating subjective complaints of pain and other symptoms. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See* SSR-96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). Where such an impairment has been proved, the ALJ must evaluate the intensity, persistence, and limited effects of the symptoms to determine whether they limit the ability to do basic work activities. *Id.; see also* 20 C.F.R. § 404.1529. In addition to objective medical evidence, the ALJ should consider the following factors in assessing the claimant's credibility:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). Although the ALJ must give specific reasons for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp.2d 863, 871 (E.D. Tex. 2005).

Here, the ALJ's decision reflects his awareness of and substantial compliance with the requirements of assessing Plaintiff's credibility and the objective evidence. The ALJ cited the regulation, thereby acknowledging its relevance to his deliberations. *See* Administrative Record [Dkt. No. 7] at 891. He then summarized and discussed Plaintiff's daily activities, *see id.* at 891, 892, 893, 898; symptoms, *see id.* at 891-95; aggravating factors, *see id.* at 892; treatment, *see id.* at 892; and other functional limitation factors, *see id.* at 895 – all evidence demonstrating the ALJ's consideration of the Section 404.1529(c)(3) factors. In his discussion, the ALJ articulated legitimate reasons for his decision. *See id.* at 887-98. For example, the ALJ observed the following discrepancies between Plaintiff's testimony and claims and the medical record: (1) "the claimant testified she has a herniated nucleus pulposus in her cervical spine, [but] there is no indication of a herniation in the medical records"; (2) "the claimant testified as to mild residual weakness in her left upper extremity secondary to transient ischemic attack, [but] there has been no objective evidence of any neurological deficits, including strength deficits, in the left upper extremity"; (3) despite a history of coronary artery disease, "the claimant denied angina" for significant periods of time

and testified she had successful stent surgery; (4) the claimant testified that her prior shoulder and knee shoulders were successful; and (5) despite testimony as to "significant depressive symptoms," there is no evidence of a "severe" mental impairment and no indication the claimant requested a referral to a mental health professional or that a physician referred her to a mental health professional. *Id.* at 895-96. In reviewing the record, and based on the above, the ALJ recognized Plaintiff has had some level of pain and functional loss since her alleged onset date, but concluded that moderate levels of pain and functional loss are not, in and of themselves, incompatible with the ability to perform work on a consistent, sustained basis at the appropriate level. *Id.* at 895. This analysis and consideration of the record and Plaintiff's testimony demonstrates the ALJ properly considered the necessary factors and provided legitimate reasons for his findings.

Moreover, the testimony to which Plaintiff points in support of her subjective claims is from the first hearing, which occurred in September 2008, and, with the exception of one comment related to effects of her TIAs, that testimony relates to her health condition at that time. *See* Dkt. No. 12-2 at 14-15, 24; Administrative Record [Dkt. No. 7] at 855-69. The ALJ found Plaintiff to be disabled during that time period, so that testimony is not relevant to, or supportive of, a finding of disability from February 2002 through November 2005.

Accordingly, the ALJ did not err in its decision with respect to addressing subjective testimony. *See* SSR-96-7p, 1996 WL 374186, at *2 ("The determination or decision must contain specific reasons for the finding on credibility, supported by the

evidence in the case record, and must be sufficiently specific to make clear ... the weight the adjudicator gave to the individual's statements and the reasons for that weight."). This alleged ground for error should be denied.

## Recommendation

The hearing decision should be affirmed as to the finding of no disability from February 26, 2002 through November 30, 2005 but reversed and remanded with respect to the finding of medical improvement as of January 1, 2009. Accordingly, the undersigned magistrate judge recommends the case be remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[3]

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

---

[3] By recommending that this case be remanded for further administrative proceedings, the undersigned does not suggest that Plaintiff is or should be found disabled.

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 7, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE